Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JEREMIAH RENTAS,**  **Plaintiff,**  v.  **VICTORIA KUHN,** *Commissioner*, *et al.*,  **Defendants.** | Civil Action No.: 24-10107 (ES) (JSA)  **OPINION** |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court upon the filing by *pro se* Plaintiff Jeremiah Rentas, a convicted state prisoner confined at Northern State Prison ("NSP"), Newark, New Jersey, of an application to proceed *in forma pauperis* (D.E. No. 2 ("IFP Application")), a complaint (D.E. No. 1 ("Complaint" or "Compl.")), and a motion for injunctive relief (D.E. No. 6 ("Motion for Injunction" or "Mot.")). For the reasons below, the Court grants the IFP Application and orders the Complaint to be filed. It further concludes, with the following caveats, that dismissal of the entire matter is not warranted at this early stage of the proceeding. The Court denies Plaintiff's Motion for Injunction *without prejudice*.

**I.    BACKGROUND**

In his Complaint, which was signed on October 17, 2024, Plaintiff explicitly names as defendants E. Trovato, an NSP sergeant, and J. Fajardo, an NSP officer. (Compl. at 4). He further names Victoria Kuhn, Commissioner of the New Jersey Department of Corrections ("NJDOC"), and the "Administration of Northern State Prison" as Defendants in the case caption. (*Id.* at 1). According to the "Parties" section of his Complaint, Trovato violated his constitutional rights by

"participat[ing] with the two G.A.s to push [him] into the cell with a gang member after [he] repeatedly stated that [he] fear[ed] for [his] life." (*Id.* at 4). Fajardo allegedly allowed Trovato and "her two (G.A.) John Doe 1 [('John Doe One')] and John Doe 2 [('John Doe Two')] ("John Does") to push [him] into the cell with a gang member after [Plaintiff] repeatedly said [he] fear[ed] for [his] life." (*Id.*). The Court accordingly construes the Complaint as naming the following defendants: (i) Kuhn; (ii) the Administration of NSP; (iii) Trovato; (iv) Fajardo; (v) John Doe One; and (vi) John Doe Two.

Plaintiff alleges that, on July 11, 2024, at approximately 10 a.m., he spoke with "the Mental Health Doctor Staff" about the reasons for him being sent to "S.V. which is constant watch because they move[d] [Plaintiff] on 7/10/24 from C-1-E and place[d] [him] in the cell with a gang member who threat[ened] to kill [him]." (*Id.* at 5). The mental health staff allegedly "totally dismissed [Plaintiff]," telling him to raise his concerns with Trovato, and "had Sgt. W. Jones to continue to place [him] on C-3-W." (*Id.* at 5–6). On the same day, Plaintiff "went to lockup" (i.e., the Restricted Housing Unit or "RHU"), and, at 10:00 a.m. on July 12, 2024, he evidently spoke with a "courtline"[1] staff member named "Ms. T. Mullen" along with an inmate named "Black" and Plaintiff explained he was placed on C-3-W in Cell 307 with a gang member who was threatening his life. (*Id.* at 6). Mullen responded that she could not help him, "found [him] not guilty," and had him sent to C-3-W "on the follow[ing] date 07/15/24." (*Id.*). When he returned to the C-3-W unit, Plaintiff "advised" Officer A. Ramirez, who directed him to return to the same cell with the same gang member (Cell 307). (*Id.*). He told Ramirez why he was not going to enter the cell Ramirez "call[ed]" Sergeant Jordan and Jordan then escorted him back to lockup. (*Id.*). On July

---

[1] "The Court assumes that the term 'courtline' refers to a 'disciplinary hearing held in prison.' *White v. Napoleon*, 897 F.2d 103, 106 n.1 (3d Cir. 1990)." *Thompson v. Dep't of Corr.*, No. 19-16391, 2022 WL 18108399, at *2 n.5 (D.N.J. Dec. 30, 2022).

2

24, 2024, at 8:40 p.m., Plaintiff (accompanied by Black) then explained the problem to Mullen a second time, she refused to assist him, "found [him] not guilty," and sent him back to C-3-W with Fajardo. (*Id.*).

Plaintiff was directed to Cell 411, which housed another gang member, and Plaintiff refused to enter the cell. (*Id.* at 6 & 8). Fajardo then called the area sergeant (Trovato), who arrived at the unit at 9:00 p.m. with "her two (G.A.) John Doe 1 and John Doe 2." (*Id.* at 8). Their body cameras were not activated. (*Id.*). Plaintiff explained to Trovato that the inmate in Cell 411 did not want him to be his cellmate, and Trovato spoke with the inmate, who clearly said that "he did not want [Plaintiff] in the cell with him due to [Plaintiff] being bisexual." (*Id.*). Trovato then asked the inmate in Cell 318, who was also a gang member, if Plaintiff could move into the cell with him. (*Id.*). The inmate "denied [Plaintiff] and stated to Sgt. E. Trovato that he d[id] not want no sex offender or people who [are] bisexual living in the cell with him and that if [Trovato] put [Plaintiff] in the cell with him he was going to kill [Plaintiff]." (*Id.*).

With Fajardo watching, Trovato and the John Does purportedly put Plaintiff's hands behind his back and held him as he repeatedly said he feared for his life. (*Id.*). They allegedly pushed Plaintiff into the cell, causing Plaintiff to "fall and hit [his] lower back on the toilet and caus[ing] serious laceration in [his] right elbow." (*Id.*). As a result of the fall, Plaintiff was unable to move, and Trovato failed to activate "a Medical Code 53." (*Id.*). Instead, Trovato handcuffed Plaintiff and escorted him to the main medical unit where, together with the John Does, Trovato "slam[med]" him into the medical chair and refused to allow medical staff to treat him. (*Id.*).

3

Plaintiff was then placed in a wheelchair, escorted to lockup, and secured in Cell 119 in Wing 2. (*Id.*).

It appears that, on July 29, 2024, Plaintiff called the ombudsperson for the New Jersey Department of Corrections regarding the assault. (*Id.* at 8–9). The ombudsperson told him the matter was going to be sent over to the "administration" by email. (*Id.* at 9). A few days later, Plaintiff was interviewed by Sergeant Shnak, and Plaintiff wrote a two-page statement on the incident. (*Id.*). Shnak told him that the matter would be sent up to the Special Investigation Department ("SID"). (*Id.*) According to Plaintiff, he was then "escorted to medical for [his] injuries and was treated for [his] injuries and later escorted and place[d] back into . . . Cell 119." (*Id.*). "[H]e was [w]aiting to see SID about the matter and ha[s] not been seen for the past 2 weeks."[2] (*Id.*).

In his Complaint, Plaintiff requests nominal damages, compensatory damages for pain and suffering, and punitive damages "for putting [Plaintiff] in danger by forcing [Plaintiff] in a cell with a gang member who repeatedly stated he did not want [Plaintiff] in the cell with him due to [Plaintiff's] sexuality & charges." (*Id.* at 6).

Plaintiff filed a motion entitled and docketed as a "Motion for Order granting Injunction for a Cellmate who lives the same lifestyle." (D.E. No. 6). In his attached declaration signed on November 24, 2024, Plaintiff declares that he is presently incarcerated at NSP, is a bisexual person who has provided notice to the NJDOC of his lifestyle, and has been: (i) "assault[ed] by [an] officer & [a] gang member;" (ii) "threaten[ed] by [a] gang member" while in the NJDOC; (iii) "for[ced] in a cell with [a] gang member; (iv) "suffer[ed] serious injury due to [his] life style & charges;"

---

[2]   Plaintiff concludes this sentence regarding not being seen by SID by stating "on [sic] 4 months." (Compl. at 9).

4

(v) "suffer[ed] from sexual assault by [a] gang member" while in the NJDOC; and (vi) receiving mental health counseling due to past "assault/sexual assaults." (Mot. at 3–4).

The Motion for Injunction was received on December 9, 2024. (D.E. No. 6). Plaintiff has submitted a letter inquiring about the status of his Motion for Injunction. (D.E. No. 7).

**II.    STANDARDS OF REVIEW**

Pursuant to 28 U.S.C. § 1915(a), the District Court may authorize a plaintiff to proceed IFP and order a complaint to be filed without requiring the prepayment of filing fees. The statute "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). However, to guard against potential "abuse" of "cost-free access to the federal courts," *id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 29 (1992)), § 1915(e) empowers the District Court to dismiss an *in forma pauperis* complaint if it "is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e).

Thus, the Court must conduct a two-step analysis when considering a complaint filed with an in forma pauperis application: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a) . . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse,* No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

Under the first step, Section 1915(a) requires Plaintiff to submit "an affidavit stating all income and assets, the plaintiff's inability to pay the filing fee, the 'nature of the action,' and the 'belief that the [plaintiff] is entitled to redress.'" *Martinez v. Harrison*, No. 23-3513, 2023 WL

5237130, at *1 (D.N.J. Aug. 15, 2023) (alteration in original) (quoting 28 U.S.C. § 1915(a)). Prisoners are additionally required to submit "a certified copy of [a] trust fund account statement . . . for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

Under the second step of the analysis, district courts must review complaints in civil actions in which a convicted prisoner or pretrial detainee is proceeding IFP, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see id.* § 1915A(a), or brings an action with respect to prison conditions, *see* 42 U.S.C. § 1997e(c). District courts may sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B), 1915A(a), or 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3rd Cir. 1986)).

To survive sua sponte screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

6

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)–(3). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986) (stating that the complaint must contain sufficient facts to put the defendants on notice permitting them to frame an answer to the plaintiff's allegations). A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). While courts liberally construe *pro se* pleadings, *pro se* litigants still are required to allege sufficient facts to support a claim and to comply with the pleading requirements of Rule 8. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders ("TROs") and preliminary injunctions. Courts apply a four-factor test when considering whether to grant injunctive relief under Rule 65. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319–20 (3d Cir. 2020). Specifically, a movant must demonstrate:

> (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury

> without relief. If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*Id.* (alteration in original) (quoting *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013)). "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980))). This heavy burden requires the party "to show a substantial likelihood of success on the merits and that [his] 'right to relief [is] undisputably clear.'" *Hope*, 972 F.3d at 320 (alteration in original) (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

Under Rule 65(b), however, a court may issue a TRO without notice to the adverse party only if the moving party provides "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required." Fed. R. Civ. P. 65(b). Granting a TRO without notice is the rare exception. "As the Supreme Court has observed, 'our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute.'" *Hope*, 972 F.3d at 320 (quoting *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020)).

### III.   DISCUSSION

#### A.   IFP Application

Plaintiff's certified inmate account statement indicates that Plaintiff had only $60.49 in his inmate account at the time of the filing of the Complaint. (IFP Application at 9). Based on

8

Plaintiff's account statement, the Court finds Plaintiff is unable to pay the filing fee for this matter, and accordingly grants his IFP Application and directs the Clerk to file his Complaint.

### B. Screening

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"). (*See* Compl. at 2). To state a claim for relief under Section 1983, a plaintiff must allege: (i) that the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived the plaintiff of a federally secured right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

For purposes of screening, the Court construes the Complaint as asserting the following claims for prospective and monetary relief under Section 1983 for alleged violations of the Eighth Amendment: (i) claims against Trovato and the John Does for failure to protect, excessive force, and failure to permit medical staff to treat Plaintiff; (ii) a claim for failure to intervene against Fajardo; and (iii) claims based on these alleged aforementioned constitutional deprivations against Kuhn (the NJDOC Commissioner) and the Administration of NSP.

#### i. Individual-Capacity Section 1983 Claims for Damages Against Kuhn

The Court first addresses the Section 1983 claims for damages against Kuhn in her individual capacity. A civil rights plaintiff must establish that each named defendant was personally involved in the alleged constitutional violation to support an individual-capacity claim for monetary relief. *See Parkell v. Danberg*, 833 F.3d 313, 330-32 (3d Cir. 2016); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). A "showing of direct responsibility" by the defendant is required, and the case law eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights." *Rizzo* v. *Goode*,

423 U.S. 362, 376–77 (1976). Accordingly, the plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676.

"A supervisor's '[p]ersonal involvement may be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.'" *McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *2 (D.N.J. Jul. 29, 2024) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

"Alternatively, a plaintiff seeking to show personal involvement for a supervisor may plead facts which show that the alleged constitutional violation is the result of a policy, practice, or custom put into effect by the supervisor." *McCoy*, 2024 WL 3580662, at *2 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–85 (3d Cir. 2003)). Specifically, a plaintiff must demonstrate that: (i) the existing custom and practice in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (ii) the defendant-official was aware that the custom and practice created an unreasonable risk; (iii) the defendant was indifferent to that risk; and (iv) the constitutional injury was caused by the failure to implement the appropriate practice or procedure. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). The plaintiff must identify the expected policy or practice that the supervisor failed to employ. *See id.* A single incident is generally insufficient to establish the existence of a policy or custom. *See Reed v. Jersey City*, No. 21-3921, 2022 WL 1664621, at *7 (D.N.J. May 24, 2022).

In addition, a plaintiff may seek to hold a supervisor liable for failing to train or supervise his or her subordinates. "Failure to" claims constitute a subcategory of policy or practice liability. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015). "[A] plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances." *Best v. Hicks*, No. 22-6911, 2024 WL 4891774, at *6 (D.N.J. Nov. 26, 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Plaintiff fails to allege any facts indicating that Kuhn was personally involved in the alleged constitutional deprivations. According to his Complaint, Plaintiff complained to correctional officers (including Trovato), "Mental Health," "courtline" staff, and the NJDOC ombudsperson (who allegedly stated that the matter was "sent" by email to "Administration"), and was interviewed by, and gave a written statement to Shnak (who informed him that the matter would be sent to the SID). (*See* Compl. at 5–6 & 8–9). "But these types of allegations—i.e., that grievances were sent to a warden or other administrator—are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it." *Haar v. CFG Health Servs., LLC*, No. 22-7595, 2024 WL 4880439, at *7 (D.N.J. Nov. 25, 2024) (citing *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013); *Butler v. Penchishen*, No. 22-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 25, 2022); *Brown v. Smith*, No. 18-0193, 2019 WL 2411749, at *5 (W.D. Pa. June 7, 2019)). In any event, Plaintiff does not allege that his concerns were presented to Kuhn.

Accordingly, the Court dismisses the individual-capacity Section 1983 for damages against Kuhn *without prejudice*.

### ii.  Official-Capacity Claims Under Section 1983

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added).  Accordingly, to be liable under Section 1983, a defendant must be a "person" within the meaning of the statute. *See id.* The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 71 (1989). Furthermore, "[i]t is well-established that state prisons and state agencies such as Northern State Prison are not 'persons' subject to liability under Section 1983." *Correa-Martinez v. No. State Prison*, No. 21-10599, 2021 WL 6062305, at *3 (D.N.J. Dec. 22, 2021) (citing *Williams v. Gartrell*, No. 15-5609, 2015 WL 5110913, at *2 (D.N.J. Aug. 31, 2015)). Accordingly, the Court dismisses *with prejudice* Plaintiff's claims against the Administration of NSP.  The Court further dismisses any official-capacity claim for damages against Kuhn, Trovato, and the John Does *with prejudice*. *See Will*, 491 U.S. at 71.

### iii.  Plaintiff's Section 1983 Claims for Prospective Injunctive Relief

Plaintiff does not explicitly request prospective injunctive or declaratory relief in his Complaint.  Instead, he merely seeks nominal, compensatory, and punitive damages.  (Compl. at 6–7).  However, given Plaintiff's status as a *pro se* litigant and his subsequent filing of a Motion for Injunction, the Court construes the Complaint as requesting prospective injunctive relief.

12

Plaintiff fails to allege facts indicating that he could satisfy the prerequisites for this extraordinary remedy.

"'The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury,' or a 'presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law.'" *Abraham v. Del. Dep't of Corr.*, 331 F. App'x 929, 932 (3d Cir. 2009) (alteration in original) (citing *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir. 1980)). Plaintiff does not allege in the Complaint any facts indicating that there is a "presently existing actual threat" to his constitutional rights. To the contrary, as of October 17, 2024 (the date Plaintiff signed the Complaint), he was housed in "2 Wing Cell 119." (Compl. at 8–9). Plaintiff does not state whether he has a cellmate in Cell 119, or, if he does, that the cellmate was a gang member who did not want to share a cell with him or made threatening comments. Furthermore, he does not allege that he has had any interactions with Trovato and the John Does since they allegedly assaulted him (and failed to allow him to receive medical care) on July 24, 2024. Plaintiff also alleges that he was subsequently treated for his injuries. (*Id.* at 9). Accordingly, the Court dismisses any claims for injunctive relief *without prejudice*.[3]

---

[3] The dismissal of the claims for injunctive relief are without prejudice because "it is well established that prison administrators may be named as defendants for claims seeking injunctive relief even where they had no personal involvement in the alleged wrongs." *Rodrigues v. Special Treatment Unit*, No. 19-14708, 2024 WL 5264262, at *5 (D.N.J. Dec. 31, 2024) (citing *Megginson v. Caldwell*, No. 15-7161, 2025 WL 13229496, at *5 (D.N.J. Dec. 4, 2015); *Mitchell v. Jones*, No. 21-0131, 2022 WL 2657365, at *6 (W.D. Mar. 9, 2022)). In addition, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

### iv. Plaintiff's Individual-Capacity Section 1983 Claims for Damages Against Trovato, Fajardo, and the John Does

The Court construes the Complaint as alleging the following individual-capacity claims under Section 1983 for damages for alleged violations of the Eighth Amendment: (i) a "failure to protect" claim against Trovato and the John Does; (ii) an excessive force claim against Trovato and the John Does; (iii) a "failure to intervene" claim against Fajardo; and (iv) a "denial of medical care" claim against Trovato and the John Does. For the reasons stated below, these claims survive the Court's screening.

Plaintiff indicates that Trovato and the John Does violated his Eighth Amendment rights by failing to protect him from the serious risk of being assaulted by another inmate. Prison officials have a constitutional duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "To establish a failure to protect claim, inmates must demonstrate that (1) they are 'incarcerated under conditions posing a substantial risk of serious harm'; and (2) the prison official acted with 'deliberate indifference' to their health and safety." *Brown v. Maxwell*, No. 23-1480, 2024 WL 1209517, at *2 (3d Cir. Mar. 21, 2024) (per curiam) (quoting *Farmer*, 511 U.S. at 834). The plaintiff must show that the official was subjectively aware of the existence of an excessive risk. *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)). However, "[a]n inmate need not suffer an assault before obtaining relief. It is enough to establish deliberate indifference if the official knows of and disregards an excessive risk to inmate health or safety." *Lopez v. Kuhn*, No. 23-2603, 2023 WL 4896778, at *3 (D.N.J. Aug. 1, 2023) (cleaned up) (quoting *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020)).

At this early stage, the Court concludes that Plaintiff adequately alleges a "failure to protect" claim for damages in their individual capacities against Trovato and the John Does. For

14

instance, he states that, after Trovato asked the inmate (and gang member) in Cell 318 whether Plaintiff could move into the cell with him, the inmate refused, telling Trovato that he did not want "no sex offender or people who [are] bisexual living in the cell with him" and that, "if [Trovato] put [Plaintiff] in the cell with him he was going to kill [Plaintiff]." (Compl. at 8). Trovato and the John Does then proceeded to use physical force to restrain and push Plaintiff into a cell occupied by another inmate who had just threatened Plaintiff's life. (*Id.*).

For purposes of examining a convicted prisoner's Eighth Amendment excessive force claim, "the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)). In this analysis, courts consider several factors, including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Plaintiff alleges that "Trovato along with her two (G.A.) John Doe 1 & 2 put [his] hands behind [his] back and held [his] hand as [Plaintiff] repeatedly stated that [he] fear[ed] for [his] life" and that the three individuals then pushed Plaintiff into the cell with sufficient force that he fell to the floor, striking the toilet with his lower back, and suffering a serious laceration to his right elbow. (Compl. at 8). Plaintiff was then unable to move, at least without assistance (given the alleged fact that he was then handcuffed and "escorted" to the main medical unit). (*Id.*). Given these factual allegations, the individual-capacity damages claims against Trovato and the John Does for failure to protect and excessive force survive at this juncture.

15

The Court also proceeds with the individual-capacity damages claim against Fajardo for allegedly violating the Eighth Amendment by failing to intervene in the actions of Trovato and the John Does when they allegedly "push[ed] [Plaintiff] into the cell with a gang member after [he] repeatedly said [he] fear[ed] for [his] life." (*Id.* at 4). "A party bringing failure-to-intervene claim must prove three factors: (1) the officer had a duty to intervene; (2) the officer had an opportunity to intervene; and (3) the officer failed to intervene." *Mitchell v. Hudson Cnty Dep't of Corr.*, No. 24-0159, 2024 WL 3102251, at *3 (D.N.J. June 24, 2024) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). "A corrections officer who witnesses but fails to intervene in the beating of an inmate by other officers is culpable if the officer had a 'reasonable opportunity to intervene but refused to do so.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004) (quoting *Smith*, 293 F.3d at 650). Here, Plaintiff alleges that Fajardo was present during the conversation between Trovato and the inmate in Cell 318 during which the inmate threatened to kill Plaintiff, witnessed Trovato and the John Does physically restrain Plaintiff, and "did not do anything" when they restrained and pushed Plaintiff onto the cell floor. (Compl. at 8); *see Ortiz v. Cumberland Cnty. Freeholders*, No. 21-19953, 2024 WL 4275003, at *5 (D.N.J. Sept. 24, 2024) ("Allegations that Fazzolari 'stood by and watched' and failed to make 'any attempt to stop' the assault, is sufficient to state a [Fourteenth Amendment failure to intervene] claim.") (citing *Cook v. Carney*, No. 24-0314, 2024 WL 3204458, at *5 (E.D. Pa. June 26, 2024)). His allegations are sufficient to state a "failure to intervene" claim at the screening stage of the proceeding.

Finally, Plaintiff claims that Trovato and the John Does failed to allow him to obtain medical treatment for his resulting injuries. (Compl. at 8). To state an Eighth Amendment medical care claim, Plaintiff must allege facts plausibly indicating that: (i) the medical needs were serious; and (ii) the defendants were deliberately indifferent to such serious medical needs. *See Rouse v.*

*Plantier*, 182 F.3d 1923, 1927 (3d Cir. 1999). The seriousness prong is met if the medical need is one that has been diagnosed by a physician as requiring treatment or is so obvious that a layperson would easily recognize the necessity for a doctor's attention. *See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F2d 326, 347 (3d Cir. 1987). At this early stage of the proceeding, Plaintiff satisfies this first prong by alleging, inter alia, that he hit his lower back on the toilet, had a serious laceration on his right elbow, was unable to move on his own, was escorted to "main medical," and refused to permit medical staff to treat Plaintiff's injury. (Compl. at 8). With respect to the second prong, "[d]eliberate indifference may be shown by 'intentionally denying or delaying medical care.'" *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 98, 104–05 (1976)). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Id.* (quoting *Farmer*, 511 U.S. at 843). Plaintiff's allegation that Trovato and the John Does "refused to allow medical staff to treat [Plaintiff] for [his] injury," (Compl. at 8), is sufficient to satisfy the second prong of a medical care claim on screening.

Accordingly, the following individual-capacity damages claims under Section 1983 for alleged violations of the Eighth Amendment survive screening: (i) the "failure to protect" claim against Trovato and the John Does; (ii) the excessive force claim against Trovato and the John Does; (iii) the "failure to intervene" claim against Fajardo; and (iv) the "denial of medical care" claim against Trovato and the John Does.[4]

---

[4] The Court's "preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by a defendant after service." *Desposito v. Fed. Bureau of Prisons*, No. 24-9263, 2024 WL 4366905, at *3 n.2 (D.N.J. Oct. 1, 2024) (citing *Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020). Furthermore, the John Does cannot be served with process. *See Small v. N.J. Dep't of Corr.*, No. 20-15082, 2021 WL 1382362, at *6 n.2 (D.N.J. Apr. 12, 2021). Plaintiff shall file an amended complaint naming the two John Does once they are discovered so they can be properly served with process should he wish to proceed with his claims against them. *Id.*

### C. Motion for Injunction

Plaintiff requests an order granting "an injunction for a cellmate of [his] choos[ing] who live[s] the same lifestyle," specifically another bisexual person (Mot. at 1). Plaintiff fails to satisfy the "particularly heavy" burden to obtain a mandatory preliminary injunction altering the status quo, *Acierno*, 40 F.3d at 653 (citing *Punnett*, 621 F.2d at 582). The Court accordingly denies the Motion for Injunction *without prejudice*.

In fact, it is highly unlikely that the Court would grant the sort of relief Plaintiff requests in his filing. There is no support for a court order directing prison officials to allow an inmate to choose his cellmate or to assign him to a cell with an inmate sharing the same sexual orientation. It is well established that "because of the 'complex and intractable problems of prison administration,' a request for injunctive relief in the prison context must be viewed with caution and judicial restraint." *Macchione v. Coordinator Adm'r in Wash., D.C.*, 591 F. App'x 48, 50 (3d Cir. 2014) (per curiam) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)). Additionally, "it is well-settled that 'a prisoner has no constitutional right to be placed in any particular cell or housing unit.'" *Calipo v. Wolf*, No. 18-0320, 2018 WL 7412835, at *6 (W.D. Pa. Nov. 21, 2018) (quoting *Williams v. Lackawanna Cnty. Prison*, 2014 WL 183901, at *5 (M.D. Pa. Jan. 14, 2014)), *R&R adopted by* 2019 WL 858035 (W.D. Pa. Feb. 22, 2019). Likewise, there is no constitutional right "to choose one's cellmate." *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam). Even if an inmate could make a substantial showing of a likelihood of success on the merits, "'the possibility of harm to the defendants in the event that preliminary relief is erroneously granted' with respect to prison placement 'appears to be substantial.'" *Calipo*, 2018 WL 7412835, at *6 (quoting *Boyd v. Larson*, 2017 WL 1904278, at *5 (M.D. Pa. Apr. 21, 2017)). Based on these well-established principles, courts have denied prisoners' requests for injunctive relief

ordering transfers to a particular cell (with a "choice" of cellmates), housing unit, or prison. *See Brown v. Stump*, No. 22-5861, 2024 WL 965164, at *3–4 (D.N.J. Mar. 6, 2024) (denying the prisoner's motion for a "single cell order," which was based on a single alleged attack by his former cellmate seven years earlier, because the prisoner failed to establish either a likelihood of success on the merits or irreparable harm given the lack of any allegation that prison officials forced the prisoner to continue to share a cell with his attacker or any specific details concerning this attack indicating another attack was possible); *Calipo*, 2018 WL 7412835, at *6 (recommending denial of the plaintiff's request to be moved out of her current cell and into a preferred cell with "her choice of roommates" because of the absence of a likelihood of success, the substantial possibility of injunctive relief harming the prison officials' ability to maintain order, and the fact that any humiliation and discomfort she had experienced from being placed in a high security cell with less privacy could be remedied with monetary damages).

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's IFP Application and orders the Complaint to be filed. It **DISMISSES** *with prejudice* Plaintiff's Section 1983 claims against the Administration of Northern State Prison and his official-capacity claims for damages under Section 1983 against Kuhn, Trovato, Fajardo, and the John Does. Plaintiff's individual-capacity Section 1983 claims for damages against Kuhn as well as his Section 1983 claims for prospective relief against Kuhn, Trovato, Fajardo are **DISMISSED** *without prejudice*. The Court permits the following individual-capacity Section 1983 claims for damages for alleged violations of the Eighth Amendment to proceed: (i) the "failure to protect" claim against Trovato and the John Does; (ii) the excessive force claim against Trovato and the John Does; (iii) the "failure to intervene" claim against Fajardo; and (iv) the "denial of medical care" claim for against Trovato and the John Does.

19

The Court **DENIES** Plaintiff's Motion for Injunction *without prejudice*. An appropriate order follows.

**Dated:** February 28, 2025

<u>s/ *Esther Salas*</u>
**Esther Salas, U.S.D.J.**
